**CASE NO. 24-1579**                    PUBLIC

## IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

———————————

### OVIS MATAMOROS CANALES,
on behalf of himself and all others similarly situated,

*Plaintiff-Appellant,*

v.

### OPW FUELING COMPONENTS LLC,

*Defendant-Appellee,*

———————————

On Appeal from the United States District Court
for the Eastern District of North Carolina at Raleigh

———————————

**OPENING BRIEF OF APPELLLANT - PUBLIC (Redacted)**

———————————

Gilda A. Hernandez
Hannah B. Simmons
Matthew S. Marlowe
LAW OFFICES OF
GILDA A. HERNANDEZ, PLLC
1020 Southhill Drive, Suite 130
Cary, NC 27513
919-741-8693
ghernandez@gildahernandezlaw.com
hsimmons@gildahernandezlaw.com
mmarlowe@gildahernandezlaw.com

*Counsel for Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 24-1579      Caption: Ovis Matamoros Canales v. OPW Fueling Components LLC

Pursuant to FRAP 26.1 and Local Rule 26.1,

Ovis Matamoros Canales
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Gilda Adriana Hernandez                     Date:        07/03/2024

Counsel for: Plaintiff/Appellant

- 2 -

## <u>TABLE OF CONTENTS</u>

**Page**

JURISDICTIONAL STATEMENT ................................................................1

    Jurisdiction of the District Court ................................................1

    Jurisdiction of the Fourth Circuit Court of Appeals.......................1

ISSUES PRESENTED FOR REVIEW ................................................3

STATEMENT OF THE CASE................................................................5

    Procedural History ................................................................6

RELEVANT FACTS ................................................................................9

    The Parties ................................................................................9

    Plaintiff-Appellant's Termination ................................................10

    Defendant-Appellee's First Safe Harbor Letter ............................13

    Defendant-Appellee's *Second* Safe Harbor Letter .......................14

    Defendant-Appellee's Motion for Sanctions.................................16

    The Court's Order Granting Defendant-Appellee's Motion for Sanctions................................................................16

    Plaintiff-Appellant's Motion for Reconsideration .........................17

    The Court's Order Denying Plaintiff-Appellant's Motion for Reconsideration ................................................................18

SUMMARY OF ARGUMENT ................................................................19

ARGUMENT ................................................................................21

    I.    STANDARD OF REVIEW ................................................21

        A.    Motions for Reconsideration..................................21

        B.    Motions for Sanctions .............................................22

i

II.   THE DISTRICT COURT ERRED IN GRANTING DEFENDANT-APPELLEE'S MOTION FOR SANCTIONS ON THE BASIS THAT PLAINTIFF'S COUNSEL FAILED TO CONDUCT THE APPROPRIATE PREFILING INVESTIGATION. ...........................................................22

   A.   Requirements of Rule 11. .........................................................22

   B.   Relevant Case Law Provides that Motions for Sanctions Should Not Be Granted Where Allegations Are Reasonably Open to Debate, and May Be Proven Later Through Discovery. ................................................................23

        1.   Medical Records Attached by Defendant-Appellee Do *Not* Contradict ██████████████████████ ████████████████████████.......................27

        2.   Medical Records Attached by Defendant-Appellee Do Not Contradict ██████████████████████ ████████████████████████████.......................29

        3.   Medical Records Attached by Defendant-Appellee Do Not Contradict ██████████████████████ ██████...............................................31

   C.   Because the Medical Records Provided by Defendant-Appellee's Counsel Did Not Contradict Plaintiff-Appellant's Claims, Plaintiff-Appellant's Counsel Performed An Appropriate Investigation In Light of the Circumstances, And Rule 11 Sanctions Were Not Warranted. ............................................................31

III.  THE DISTRICT COURT ERRED IN FINDING PLAINTIFF-APPELLANT'S COUNSEL RECEIVED PROPER NOTICE PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE DESPITE NOT GRANTING DEFENDANT-APPELLEE'S MOTION TO DISMISS THE ENTIRETY OF PLAINTIFF-APPELLANT'S INDIVIDUAL CLAIMS. .............................................................34

A. Federal Rule of Civil Procedure 11 Specifies that Strict Notice Requirements Must Be Met Before Sanctions Can Be Issued. ....................................................................................34

B. Defendant-Appellee Made Clear That Plaintiff-Appellant's Individual Claims Needed to Be Withdrawn to Avoid Rule 11 Sanctions. ....................................................35

  1. The District Court Ignored that Defendant-Appellee's Demands Were For Plaintiff-Appellant to *Withdraw* Counts III through IV to Cure Deficiencies Raised by Defendant-Appellee..................36

  2. Due Process Was Not Afforded as Plaintiff-Appellant's Counsel Would Have Responded Differently Had Defendant-Appellee Requested Plaintiff-Appellant Remove Three Allegations, Rather than Claims. ......................................................37

IV. THE DISTRICT COURT ERRED IN DENYING PLAINTIFF-APPELLANT'S RULE 54 MOTION FOR RECONSIDERATION ON THE BASIS OF PLAIN ERROR OR MANIFEST INJUSTICE WHERE PLAINTIFF-APPELLANT'S COUNSEL WAS NOT AFFORDED PROPER NOTICE PURSUANT TO RULE 11 OF THE FEDERAL RULES OF IVIL PROCEDURE. ....................................................40

A. Relevant Case Law Provides that Rule 11 Sanctions Orders Should Be Reversed Where Strict Procedural Requirements Were Not Followed. ..........................................40

V. THE DISTRICT COURT ERRED IN DENYING PLAINTIFF-APPELLANT'S RULE 54 MOTION FOR RECONSIDERATION DESPITE PLAINTIFF-APPELLANT'S NEWLY DISCOVERED EVIDENCE (FULL ACCESS TO OPT-IN PLAINTIFF, (FORMERLY THIRD PARTY/PUTATIVE PLAINTIFF) NARCISO SOLIS'S MEDICAL DOCUMENTS). ............................................................42

A. New Evidence Warrants Reconsideration of Orders In the Fourth Circuit...............................................................42

B.    The District Court Abused its Discretion in *Denying* Plaintiff-Appellant's Motion for Reconsideration Based on Newly Available Evidence. .................................................43

    1.    New Evidence, Namely the Additional Medical Documents from New Opt-in Plaintiff Estrella Solis, Demonstrated that the Medical Records Previously Provided by Defendant-Appellee Did Not Showcase the Extent of the Injuries and Impact Solis Suffered from His Accident At OPW...................44

    2.    The District Court's Finding That One Day Was Not Sufficient to Conduct A Reasonable Inquiry Was an Abuse of Discretion. ..........................................46

CONCLUSION ......................................................................................46

REQUEST FOR ORAL ARGUMENT ................................................47

# Table of Authorities

## Cases

*Andrews & Lawrence Pro. Servs., L.L.C. v. Bertinelli*,
    22-1592, No. 22-1658, 2023 WL 4399233 (4th Cir. July 7, 2023) .................... 3

*Blue v. U.S. Dept. of Army,*
    914 F.2d 525 (4th Cir. 1990)...................................................................22

*Boryan v. United States*,
    884 F.2d 767 (4th Cir. 1989). ...............................................................42

*Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.,*
    369 F.3d 385 (4th Cir. 2004)...................................................................19

*Brubaker v. City of Richmond,*
    943 F.2d 1363 (4th Cir. 1991) .......................................................... 31, 32

*Carter v. City of Philadelphia,*
    181 F.3d 339 (3d Cir. 1999)....................................................................2

*Christiansburg Garment Co. v. EEOC,*
    434 U.S. 412 (1978)..............................................................................24

*Cleveland Demolition Co. v. Azcon Scrap Corp.,*
    827 F.2d 984 (4th Cir.1987)....................................................................23

*Collison v. Int'l Chem. Workers Union,*
    34 F.3d 233 (4th Cir.1994 ......................................................................21

*Cooter & Gell v. Hartmarx Corp.*,
    496 U.S. 384 (1990)................................................................................22

*Donaldson v. Clark,*
    819 F.2d 1551 (11th Cir. 1987). .............................................................36

*Elliott v. Archdiocese of New York*,
    682 F.3d 213 (3d Cir. 2012)....................................................................1

*Fidrych v. Marriott Int'l, Inc.,*
    952 F.3d 124 (4th Cir. 2020)...................................................................24

*France v. Zapata Haynie Corp.*,
    946 F.2d 885 (4th Cir. 1991) ................................................................42

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    137 S. Ct. 1186 (2011) ........................................................................24

*Howell v. Nesbit*,
    149 F.3d 1168 (4th Cir. 1998). ...............................................40, 41, 42

*Hunter v. Earthgrains Co. Bakery*,
    281 F.3d 144 (4th Cir. 2002) .......................................................23, 44

*In re Glasco*,
    321 B.R. 695 (W.D.N.C. 2005) ...................................................*passim*

*In re Kuntsler*,
    914 F.2d 505 (4th Cir. 1990) .........................................32, 33, 34, 46

*In re Sargent*,
    136 F.3d 349 (4th Cir.1998) ................................................................23

*IO Moonwalkers v. Banc of Am.*,
    258 N.C. App. 618 (2018) ....................................................................2

*Johnson v. Waddell & Reed, Inc.*,
    74 F.3d 147 (7th Cir. 1996) ................................................................41

*Koon v. United States*,
    518 U.S. 81 (1996) .............................................................................21

*Lokhova v. Halper*,
    30 F.4th 349 (4th Cir. 2022) .....................................24, 25, 27, 29, 30

*Pritchard v. Wal Mart Stores, Inc.*,
    3 Fed.Appx. 52 (4th Cir. 2001) ..........................................................21

*Rector v. Approved Federal Sav. Bank*,
    265 F.3d 248 (4th Cir. 2001) ..............................................................34

*Simmerman v. Corino*,
    27 F.3d 58 (3d Cir. 1994) ...................................................................34

*Simpson v. Welch,*
  900 F.2d 33 (4th Cir.1990)..................................................................23

*Steele  v. Richland County Dep't of Social Servs.,*
  25 F.3d 1041 (4th Cir. 1994)......................................................... 34, 35

*Taggart v. Lorenzen*,
  587 U.S. 554 (2019)..........................................................................24

*TMM Data, LLC v. Braganza,*
  No. 5:14-CV-729-FL, 2016 WL 1228595 (E.D.N.C. Mar. 28, 2016).... 19, 20, 24

*United States ex rel. Carter v. Halliburton Co.*,
  866 F.3d 199 (4th Cir. 2017)............................................................21

*United States v. Glover*,
  9 Fed. App'x. 167 (4th Cir. 2001) ...................................................21

*United States v. Herrold,*
  962 F.2d 1131 (3d Cir. 1992)............................................................21

*United States v. Holland,*
  214 F.3d 523 (4th Cir. 2000)............................................................21

## Statutes

28 U.S.C. § 1291 ...............................................................................1, 2

28 U.S.C. § 1337................................................................................1

29 U.S.C. § 201 ...............................................................................1, 5

N.C. Gen. Stat. § 95-240.................................................................1, 6

N.C. Gen. Stat. § 95-25.6.................................................................6

N.C. Gen. Stat. §§ 95-25.1 .............................................................1, 5

## Rules

Fed. R. Civ. P. 11 ...................................................................... *passim*

Fed. R. Civ. P. 54 ...................................................................... *passim*

vii

N.C Rule Prof. Cond. 4.2 ........................................................ 33, 45

N.C. Rules of Prof. Conduct R. 1.1 ...........................................40

N.C. Rules of Prof. Conduct R. 8.4 ...........................................40

**Other Authorities**

Amit Piple , et al.
  Cervical Spine CT Can Miss Fractures in American Football Players
  When Protective Equipment is in Place: A Cadaver Study, Sept. 1, 2021,
  https://pubmed.ncbi.nlm.nih.gov/34032688/ .......................................................28

Jie Hu, et al.,
  Missed rib fractures on initial chest CT in trauma patients: time patterns,
  clinical and forensic significance, Sept. 30, 2020,
  https://pubmed.ncbi.nlm.nih.gov/33000304/ .......................................................28

# JURISDICTIONAL STATEMENT

## Jurisdiction of the District Court

This appeal arises from a final judgment on a motion for reconsideration order of the District Court for the Eastern District of North Carolina ("District Court"), which has subject matter jurisdiction of this collective and class action, pursuant to 28 U.S.C. § 1337 (Federal Question), in relevant part, for Plaintiff-Appellant's cause of action for unpaid overtime wages pursuant to the Federal Fair Labor Standards Act of 1938 ("FLSA"), as amended 29 U.S.C. § 201 *et seq.*, as well as Plaintiff-Appellant's second cause of action for earned and accrued promised and unpaid wages for all hours worked, benefits, and statutory damages under the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. §§ 95-25.1, *et seq.* and individual claims filed pursuant to the North Carolina Retaliatory Discrimination Act ("REDA") and North Carolina Public Policy, N.C. Gen. Stat. § 95-240.

## Jurisdiction of the Fourth Circuit Court of Appeals

This Court has jurisdiction over this appeal because it falls within one of the exceptions to the final judgment rule raised under 28 U.S.C. § 1291 pursuant to Federal Rule of Civil Procedure 54(b). *Elliott v. Archdiocese of New York*, 682 F.3d 213, 219 (3d Cir. 2012) ("Under Rule 54(b) [. . .] a district court may convert an order adjudicating less than an entire action to the end that it becomes a 'final' decision over which a court of appeals may exercise jurisdiction under 28 U.S.C. §

1

1291."). Specifically, an order is appealable pursuant to Federal Rule of Civil Procedure 54(b) where the court (1) directed "entry of a final judgment as to one or more, but fewer than all, claims or [the rights and liabilities of fewer than all] parties, and (2) where the court found no just reason for delay. Fed. R. Civ. P. 54(b).

Here, the District Court directed entry of a final judgment as to fewer than all claims or parties when it denied Plaintiff-Appellant's Motion for Reconsideration of the District Court's order granting Defendant-Appellee's Motion for Sanctions. J.A.325-330. Specifically, the District Court's order was entered pursuant to Rule 54(b). J.A.325 ("This matter comes before the Court on [P]laintiff[-Appellant]'s [M]otion to [R]econsider pursuant to Rule 54(b) an order imposing sanctions against plaintiff and his counsel pursuant to Rule 11 of the Federal Rules of Civil Procedure."); J.A.326; J.A.327 ("Rule 54(b) [. . .] provides that a court may revise any order entered prior to entry of final judgment."). Moreover, although the District Court did not explicitly find there was no just reason for delay, such magic words are not required where it is ascertainable from the record. *Carter v. City of Philadelphia,* 181 F.3d 339, 345 (3d Cir. 1999) (". . .[W]e nevertheless hold that we have jurisdiction to hear this appeal because we are able to ascertain the propriety of the Rule 54(b) certification from the record. To hold otherwise would undermine the policies which Rule 54(b) seeks to advance."); *IO Moonwalkers v. Banc of Am*., 258 N.C. App. 618, 814 S.E.2d 583 (2018) (finding the court's failure to find "no just

reason for delay" was inadvertent, and that the trial court's express reference to Rule 54(b) was sufficient to allow immediate appellate review under Rule 54(b)). Additionally, the District Court issued an order the following day setting out the process for the calculation and payment of the amount of attorneys' fees OPW is entitled to receive, showcasing the District Court's desire to avoid delay. J.A.331-335.

Additionally, the Fourth Circuit has reviewed motions for reconsideration of motion for sanctions orders in other matters pursuant to Rule 54(b). *Andrews & Lawrence Prof. Servs., LLC v. Bertinelli*, Ca. No. 22-1592, Ca No. 22-1658, 2023 WL 4399233 (4th Cir. July 7, 2023). Specifically, in *Andrews & Lawrence Professional Services, LLC*, the Fourth Circuit reviewed a motion for reconsideration of a district court motion for sanctions order, pursuant to Rule 54(b). *See id.* As such, because the District Court's order denying Plaintiff-Appellant's Motion for Reconsideration directed final entry as to fewer than all claims or parties, entered pursuant to Rule 54(b), and because a finding that there was no just reason for delay as to its entry is ascertainable from the record, the Fourth Circuit has appellate jurisdiction over the instant matter.

## ISSUES PRESENTED FOR REVIEW

The primary issues and arguments raised in the instant appeal are as follows:

(1)     Did the District Court err in granting Defendant-Appellee's Motion for Sanctions in determining Plaintiff-Appellant's Counsel failed to conduct the appropriate prefiling investigation into three factual allegations (unrelated to Plaintiff-Appellant's individual claims) – before the filing of Plaintiff-Appellant's Amended Complaint?

(2)     Did the District Court err in granting Defendant-Appellee's Motion for Sanctions where Plaintiff-Appellant's Counsel did not receive proper notice pursuant to Rule 11 of the Federal Rules of Civil Procedure where Defendant-Appellee's threat for Rule 11 sanctions differed from the District Court's ultimate findings, given Defendant-Appellee made clear Plaintiff-Appellant could only avoid a motion for sanctions by withdrawing his individual claims?

(3)     Did the District Court err in denying Plaintiff-Appellant's Motion for Reconsideration on the basis that Plaintiff-Appellant did not receive proper Rule 11 notice where the District Court's granting of Rule 11 sanctions differed from Defendant-Appellee's demands in its Rule 11 letter, threatening Rule 11 sanctions?

(4)     Did the District Court err in denying Plaintiff-Appellant's Motion for Reconsideration where new evidence further showcased that Plaintiff-Appellant's counsel performed an adequate inquiry into the allegations relating to Narciso Solis, and where new medical records provided that Plaintiff-Appellant's allegations were *not* contradicted or impossible in light of Defendant-Appellee's singular set of

medical records from the *first* day of Narciso Solis's work-related accident provided *before* Plaintiff-Appellant amended his Complaint?

## STATEMENT OF THE CASE

Plaintiff Ovis Canales ("Plaintiff-Appellant") on behalf of himself and others similarly situated (collectively, "Plaintiff-Appellants"), filed suit against Defendant-Appellee OPW Fueling Components LLC ("Defendant-Appellee") to recover unpaid statutory overtime wages under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq*. ("FLSA") and for unpaid earned, owed, and accrued wages under the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1 *et seq*., including payment of all promised wages for all hours worked.

Specifically, Plaintiff-Appellant asserts that Defendant-Appellee has (1) violated the FLSA because it has failed to comply with its statutory obligation to pay overtime wages at time and one-half for hours worked in excess of forty (40) per week; (2) violated the NCWHA because despite notifying Plaintiffs-Appellants of their non-exempt hourly status, promised premium overtime eligibility, hourly rates, promised bonuses, shift differentials, and promise to pay for all hours worked as recorded consistent with timekeeping policies, including for hours less than and in excess of forty (40) hours per week through an employee handbook and/or earning statements, Plaintiff-Appellants were not always paid consistent with Defendant-

Appellee's written policies and practices in violation of N.C. Gen. Stat. § 95-25.6;

and (3) Plaintiff-Appellant asserts individual claims under the North Carolina

Retaliatory Employment Discrimination ("REDA"), N.C. Gen. Stat. § 95-240, for

discriminating against Plaintiff-Appellant following complaints regarding

workplace safety and for participation in a safety and workplace accident

investigation involving Third-Party Co-Worker, Narciso Solis ("Solis").  J.A.17-45.

**Procedural History**

On November 16, 2024, Plaintiff-Appellant filed a Complaint in the United

States Eastern District of North Carolina. J.A.17-45. On January 26, 2024,

Defendant-Appellee sent Plaintiff-Appellant a Safe Harbor letter, threatening Rule

11 sanctions based on Plaintiff-Appellant's original Complaint. J.A.382-402. On

January 27, 2024, after some discussions between Plaintiff-Appellant and his

counsel, Plaintiff-Appellant filed his First Amended Complaint ("FAC"). J.A.46-77.

Defendant-Appellee sent another Safe Harbor letter threatening Rule 11 sanctions

on February 10, 2024, based on Plaintiff-Appellant's FAC. J.A.357-380.

On March 3, 2024, Plaintiff-Appellant filed a motion to disqualify Defendant-

Appellee. J.A.79-81.[1] On March 6, 2024, Defendant-Appellee filed a motion for

---

[1] Attached to Plaintiff-Appellant's Motion to Disqualify were declarations from
Plaintiff-Appellant's counsel (J.A.88-91), in addition to  Narciso Solis's wife,
Estrella Solis (J.A.92-94). Additionally, Plaintiff-Appellant attached a copy of an
email to the State Bar demonstrating Plaintiff-Appellant's efforts to investigate

Rule 11 sanctions. J.A.346-356. Defendant-Appellee also filed its Answer to Plaintiff-Appellant's FAC on March 6, 2024. J.A.98-121. On March 21, 2024, Plaintiff-Appellant filed a response in opposition to Defendant-Appellee's Motion for Rule 11 Sanctions. J.A.125-143. Defendant-Appellee filed a reply in support of its Motion for Rule 11 Sanctions on April 4, 2024. J.A.144-153. Additionally, Plaintiff-Appellant filed a notice of suggestion of subsequent authority on May 18, 2024. J.A.154-156. On January 10, 2024, United States Magistrate Judge Robert T. Numbers, II of the Eastern District of North Carolina entered an order granting Defendant-Appellee's Motion for Rule 11 Sanctions and denying Plaintiff-Appellant's Motion to Disqualify. J.A.403-419.

On January 29, 2024, Plaintiff-Appellant filed a notice of filing consent to join suit as party plaintiff alongside her Consent to File Suit Form for new opt-in Plaintiff Estrella Solis, who expressed to her counsel an interest in joining the present action. J.A.157-158.[2] That same day, Plaintiff-Appellant filed his Motion for Reconsideration of the District Court's Order sanctioning Plaintiff-Appellant's counsel, and on February 2, 2024, Plaintiff-Appellant filed his Amended

---

whether Defendant-Appellee's actions were in violation. J.A.95-97. Plaintiff-Appellant also attached the two letters from Defendant-Appellee notifying Plaintiff-Appellant of its anticipated Motion for Rule 11 sanctions. J.A.82-84; J.A.85-87.

[2] Moreover, Plaintiff-Appellant filed a declaration of Estrella Solis's counsel for her husband's worker's compensation claim, Robert A. Frey ("Frey"), to demonstrate the communications between Frey and Estrella Solis regarding Estrella Solis's interest in opting into this action. J.A.159-160.

Memorandum in Support of his Motion for Reconsideration. J.A.458-482. Alongside Plaintiff-Appellant's Motion for Reconsideration, Plaintiff-Appellant filed another declaration of Estrella Solis, inclusive of additional medical records related to Narciso Solis's work-related accident and medical treatment. J.A.420-457.[3]

In addition, Plaintiff-Appellant filed his Motion and supporting Memorandum for Leave to Amend his Complaint based on such new information on January 29, 2024. J.A.164-256. Defendant-Appellee filed its Response in Opposition to Plaintiff-Appellant's Motion for Leave to Amend and Motion for Reconsideration on February 12, 2024. J.A.483-513. Plaintiff-Appellant filed his Reply in Support of his Motion for Leave to Amend and Motion for Reconsideration on February 23, 2024. J.A.514-542. After the District Court granted Plaintiff-Appellant's Motion for Leave to Amend (J.A.261-267), Plaintiff-Appellant filed his Second Amended Complaint ("SAC"). J.A.268-301. Defendant-Appellee filed an answer to Plaintiff-Appellant's SAC on May 3, 2024. J.A.302-324.

On June 5, 2024, the Honorable Terrence W. Boyle United States District Judge for the Eastern District of North Carolina entered an order denying Plaintiff's Motion for Reconsideration pursuant to Rule 54(b) of the Federal Rules of Civil

---

[3] Additionally, Plaintiff-Appellant filed a supplemental declaration from Estrella Solis, requesting the District Court seal her husband's newly provided medical records. J.A.257-260.

Procedure. J.A.325-330. The following day, the United States Magistrate Judge Robert T. Numbers II entered an order regarding Defendant-Appellee's Motion for Attorneys' Fees relating to its Motion for Sanctions. J.A.331-335. Plaintiff-Appellant timely filed his Notice of Appeal on June 19, 2024. J.A.336-337. Plaintiff-Appellant amended his Notice of Appeal on June 24, 2024. J.A.338-339. Thereafter, on July 2, 2024, Plaintiff-Appellant filed an emergency motion to stay the District Court's Order granting Defendant-Appellee's Motion for Sanctions, pending appellate review. J.A.340-345.

**RELEVANT FACTS**

### The Parties

Defendant-Appellee is a diversified global manufacturer and solutions provider that delivers innovative equipment, components, consumable supplies, aftermarket parts, software and digital solutions, and support services. J.A.271-272. Defendant-Appellee has an annual revenue of approximately $8 billion, and according to its website, has five (5) operating segments: engineered products, clean energy and fueling, imaging and identification, pumps and process solutions, and climate and sustainability technologies. J.A.271-272.

Defendant-Appellee employs individuals in various positions, including, but not limited to, machine operators and welders. J.A.272. Defendant-Appellee, however, fails to compensate machine operators and welders for all hours worked.

9

J.A.291-295. Additionally, Defendant-Appellee fails to comply with Occupational Health and Safety Standards ("OSHA"), as Defendant-Appellee requires Plaintiff-Appellants to fix their own machines. J.A.295-298.

Plaintiff-Appellant formerly worked for Defendant-Appellee as a machine operator and welder at its Selma, North Carolina location. J.A.272. Defendant-Appellee employed Plaintiff-Appellant and similarly situated employees within the state of North Carolina. J.A.271-272.

### Plaintiff-Appellant's Termination

In November 2021, Defendant-Appellee terminated Plaintiff-Appellant due to his complaints relating to the safety of machinery on site, but more specifically, *after* Plaintiff-Appellant's participated in an investigation relating to a work-related accident involving Plaintiff-Appellant's co-worker, Narciso Solis. J.A.280-287. Prior to Solis's work-related accident, Plaintiff-Appellant complained frequently to management that machines were constantly malfunctioning. J.A.280-281. However, Plaintiff-Appellant's complaints fell on deaf ears, and Defendant-Appellee continued requiring Plaintiffs to fix their own machinery. J.A.280-281.

Approximately one month before Plaintiff-Appellant was terminated, Plaintiff-Appellant's team leader Moises Mena ("Mena") ordered Plaintiff-Appellant to assist his coworker Narciso Solis in operating his machine. J.A.282-283. Plaintiff-Appellant was unable to refuse, due to fears of reprisal, and Mena's

history of retaliating against Plaintiff-Appellant when Plaintiff attempted to refuse such requests. J.A.282. When Plaintiff-Appellant went to help Solis with his machine, Plaintiff-Appellant noticed Solis's machine was not working properly. J.A.283. Unsurprisingly, Plaintiff-Appellant observed Solis attempting to fix his machine as such was common practice for machine operators working for Defendant-Appellee given any complaints regarding such faulty machinery were ignored by Defendant-Appellee. J.A.283. Unfortunately, while trying to fix his machine, Solis suffered a serious accident, as the beam Solis had placed to repair the machine caused him to suffer a terrible fall. J.A.283-284.

For weeks following Solis's accident, and as relevant to Plaintiff-Appellant's individual claims, Defendant-Appellee began repeatedly questioning Plaintiff-Appellant. J.A.284-286. When Plaintiff-Appellant could not truthfully confirm the safety of the machines (but rather the opposite and mentioned the ongoing malfunctions and company's practice in requiring employees to repair their own machines), Defendant-Appellee sought to terminate Plaintiff and rid [it]self of any potential evidence or witness who could contradict Defendant's denial of responsibility for Solis's injuries. J.A.285.

Indeed, approximately one week after the accident, the Human Resources ("HR") Director ("Janie") and Safety Director ("Frank") began questioning Solis's placement of the beam that lead to Solis's fall. In response, Plaintiff-Appellant

11

repeatedly explained that Solis was only attempting to repair his machine, as machine operators were expected to do, and as was common practice at OPW. J.A.285.  After this conversation with Defendant-Appellee's management, Plaintiff-Appellant faced increased scrutiny in his work. J.A.285. One week before Plaintiff-Appellant was terminated, Safety Director Frank and HR Director Janie questioned Plaintiff-Appellant *again* about Solis's incident; however, this time Frank and Janie accused Plaintiff-Appellant of violating Defendant-Appellee's safety policy and blamed Plaintiff-Appellant for  the accident despite the fact that Plaintiff-Appellant informed Defendant-Appellant OPW that his team leader "Mena" had ordered him to assist Solis, and  Plaintiff-Appellant's only job was to push a button. J.A.285-286.

Additionally, Plaintiff-Appellant explained that Solis was fully in control of the machine. J.A.286.  One week after Safety Director Frank and HR Director Janie accused Plaintiff-Appellant of violating Defendant-Appellant's safety policies. Thereafter, Plaintiff-Appellant was called into the office and terminated. J.A.286. Plaintiff-Appellant was told that Defendant-Appellee was no longer in need of his services, and that he was being terminated for allegedly violating Defendant-Appellee's safety policies. J.A.286. Based on the context of the meeting, it became obvious to Plaintiff-Appellant that Defendant-Appellee was shifting the blame to Plaintiff-Appellant for Solis's work accident. J.A.286.

### **Defendant-Appellee's First Safe Harbor Letter**

Following the filing of Plaintiff-Appellant's Original Complaint on November 16, 2022, on January 26, 2023, Defendant-Appellee's Counsel sent Plaintiff-Appellant's Counsel correspondence pursuant to Fed. R. Civ. P. 11, stating that if "[Plaintiff-Appellant's Counsel] failed to voluntarily agree to file an amended complaint withdrawing Counts III through V by February 16, 2023, Defendant-Appellee's Counsel would file [a motion for sanctions under FRCP11]." J.A.382-383.[4] Additionally, Defendant-Appellee's Counsel sought to have factual allegations relating to Plaintiff-Appellant's co-worker (formerly Third-Party) Narciso Solis's work-related accident removed from his Original Complaint. J.A.358-359.[5]

In support of Defendant-Appellee's Rule 11 correspondence, Defendant-Appellee's Counsel disclosed unauthorized *and* unredacted medical documents belonging to Third-Party Solis (limited to the *first* day of Solis's work-related accident). J.A.373-380. Defendant-Appellee also attached a draft of a motion for sanctions. J.A.360-372. In its draft motion for sanctions attached to its Rule 11 letter, Defendant-Appellee stated they were not "seek[ing] only to have the sanctionable

---

[4] Plaintiff-Appellant's individual claims, (Counts III through V), included intentional infliction of emotional distress, retaliation, and wrongful termination. J.A.40-43.
[5] Specifically, Plaintiff-Appellant's individual claims, (Counts III through V) relied on factual allegations relating to Plaintiff-Appellant's OSHA complaints due to Defendant-Appellee's faulty machinery *and* his participation in an investigation resulting from Plaintiff-Appellant witnessing co-worker (formerly Third Party) Solis's work-related accident. J.A.40-43.

allegations stricken from the Complaint," rather, it was Defendant-Appellee's repeated position that the District Court needed to *dismiss* Plaintiff-Appellant's individual claims in their entirety to cure issues raised by Defendant-Appellee's counsel. J.A.391-393. Defendant-Appellee further explained that the reason Defendant-Appellee sought to have Plaintiff-Appellant's individual claims withdrawn was because such claims were "based on" Plaintiff-Appellant's allegations relating to Solis's accident. J.A.391-392.

Immediately after Plaintiff-Appellant's counsel received Defendant-Appellant's Rule 11 correspondence, (that *same* day), Plaintiff-Appellant's counsel spoke to Plaintiff-Appellant who clarified certain factual allegations based on *personal* knowledge; thus, based on such clarification, Plaintiff-Appellant's original complaint was amended and several allegations relating to Solis's work accident and injuries were removed. J.A.46-78. However, Plaintiff-Appellant refused to withdraw Plaintiff-Appellant's individual claims because it was clear to Plaintiff-Appellant's counsel that such medical records contained little, if any, relevance to Plaintiff-Appellant's individual claims. J.A.46-78.

### Defendant-Appellee's *Second* Safe Harbor Letter

Despite Plaintiff-Appellant's amended Complaint, on February 10, 2023, Defendant-Appellee's Counsel sent Plaintiff-Appellant's Counsel a *second* Rule 11 Letter threatening sanctions. J.A.358-380. Defendant-Appellee, *again*, without

14

Third-Party Solis's family's knowledge and consent, re-attached only the *first* day of Solis's unredacted medical records from Solis's work-related accident reiterating that if "[Plaintiff-Appellant's counsel] fail[ed] to voluntarily agree to file a second amended complaint *withdrawing* the factual allegations *and* Counts 3 through 5 by March 3, 2023, [Defendant-Appellee's counsel] would file [a motion for sanctions] with the Court." J.A.359. Again, Defendant-Appellee attached a draft motion for sanctions to his letter, which contained the same language, that Defendant-Appellee was not "seek[ing] only to have the sanctionable allegations stricken from the Complaint." J.A.359.

Again, because Plaintiff-Appellant and/or his Counsel believed in the legitimacy of Plaintiff-Appellant's individual claims, and because such medical records did *not* unequivocally contradict Plaintiff-Appellant's individual claims or allegations, Plaintiff-Appellant's Counsel refused to withdraw Counts III through V despite Defendant-Appellee's Counsel's threats of filing a Rule 11 motion. J.A.382-394. Additionally, given Plaintiff-Appellant's counsel's experience with amending the complaint prior, and removing some of the allegations that Defendant-Appellee found problematic, it became clear Defendant-Appellee would follow through with its motion for Rule 11 sanctions, unless Plaintiff-Appellant wholly withdrew his *three* individual claims, as specified in its draft Motion for Sanctions. J.A.382-394.

**Defendant-Appellee's Motion for Sanctions**

Indeed, on March 6, 2023, Defendant-Appellee filed its Motion for Sanctions against Plaintiff-Appellant's Counsel. J.A.346-356. In its Motion, Defendant-Appellee included the same position as included in its draft Motion for Sanctions, that if Plaintiff-Appellant's allegations relating to Solis's accident were "passing claims that ha[d] little relevance to [Plaintiff-Appellant's] causes of action," Defendant-Appellee would "seek only to have the sanctionable allegations stricken from the Complaint." J.A.352-353. However, because it was Defendant-Appellee's position that "the sanctionable allegations [we]re integral to [Plaintiff-Appellant's] claims related to his separation from employment [. . .]" Defendant-Appellee requested the District Court dismiss Plaintiff-Appellant's individual claims in their entirety. J.A.352-354.

**The Court's Order Granting Defendant-Appellee's Motion for Sanctions**

On January 10, 2024, Magistrate Judge Robert T. Numbers granted Defendant-Appellee's Motion for Sanctions for up to $10,000 in attorneys' fees on the basis that Plaintiff-Appellant's Counsel allegedly failed to conduct the appropriate pre-filing investigation into *solely* three factual allegations in Plaintiff's Appellant's Amended Complaint (J.A.403-419), despite the District Court's dismissal of only *one* of three Plaintiff-Appellant's individual claims. J.A.407.

16

To be clear, the District Court refused to dismiss all of Plaintiff-Appellant's individual claims, finding that such was not warranted in the circumstances. J.A.403-419.  Additionally, the District Court struck only *three* allegations from Plaintiff-Appellant's FAC, relating to Solis's injuries. J.A.418-419. The basis of the District Court's decision was that Plaintiff-Appellant's counsel allegedly violated Rule 11(b)(3) by failing to conduct a reasonable investigation. J.A.418-419. The District Court went on to "require [Plaintiff-Appellant's counsel] to pay OPW's reasonable expenses, including attorney's fees [. . .] up to $10,000" as a sanction. J.A.419.

### Plaintiff-Appellant's Motion for Reconsideration

On January 29, 2024, Plaintiff-Appellant filed his Motion for Reconsideration, (Amended Memorandum in Support filed on February 2, 2024) (J.A.458-482), requesting the District Court reconsider the Order granting sanctions, (J.A.403-419) on the basis that new evidence demonstrated Plaintiff-Appellant's counsel performed a reasonable inquiry under the circumstances and was justified in *not* relying on Defendant-Appellee's cherry-picked medical records (J.A.467-474; J.A.534-539), and on the basis that the Court's order was manifestly unjust given Plaintiff-Appellant was not given proper notice. J.A.474-482; J.A.526-534.

Specifically, Plaintiff-Appellant's Counsel did *not* receive proper Rule 11 Notice from Defendant-Appellee; in particular, the Rule 11 Notice required Plaintiff-Appellant to not only remove factual allegations from his Amended

17

Complaint (J.A.475-479; J.A.531-534) but *also* required removal of Counts III through V *in their entirety*, to supposedly cure the alleged deficiencies in Plaintiff-Appellant's Amended Complaint, (J.A.381-382; J.A.358-359). However, the basis of the Magistrate Judge's Order and Memorandum (J.A.403-419) granting sanctions was *solely* based on a finding that Plaintiff-Appellant failed to investigate and remove *three* factual allegations from his Amended Complaint to cure the Rule 11 deficiencies. J.A.418-419.

In support of Plaintiff-Appellant's Motion for Reconsideration, (J.A.458-482), Plaintiff-Appellant attached *new* evidence showcasing Plaintiff-Appellant's Counsel was justified in *not* relying on Defendant-Appellee's Counsel's representations limited to the first day of Solis's medical records as additional evidence showed the extent of Solis's injuries because Plaintiff-Appellant's Counsel now represented the widow of Opt-in Plaintiff Narciso Solis with *complete* access to the extent of his medical injuries and relevant medical records. J.A.420-457.

**The Court's Order Denying Plaintiff-Appellant's Motion for Reconsideration**

On June 5, 2024, the District Court issued an Order denying Plaintiff-Appellant's Motion for Reconsideration affirming the Magistrate Judge's Order granting Defendant-Appellee's Motion for Sanctions. J.A.325-330. In that same Order, the District Court held that the new evidence "d[id] not support a finding that restricting [P]laintiff[-Appellant] from relying on three, specific allegations was in

error." J.A.328. The District Court did *not* address Plaintiff-Appellant's argument that the District Court's order was clear error, or whether Plaintiff-Appellant received adequate notice pursuant to Rule 11 of the Federal Rules of Civil Procedure. J.A.325-330.

Plaintiff-Appellant timely appealed. J.A.336-339. The pending appeal challenges the entirety of the District Court's Order pursuant to Fed. R. Civ. P. 54(b).

## SUMMARY OF ARGUMENT

As outlined and supported herein, the District Court's ruling on the issues and arguments presented is legally and factually deficient and should be rejected by the Court. Motions for sanctions based on allegations in a pleading should be analyzed under an abuse of discretion standard and should only be granted where no facts may become relevant later to support such allegations. *TMM Data, LLC v. Braganza*, No. 5:14-CV-729-FL, 2016 WL 1228595, at *5 (E.D.N.C. Mar. 28, 2016) (precluding a finding that plaintiff's claim was frivolous because plaintiff's positions was "reasonably open to debate" at the time of filing). Additionally, as specified in Rule 11, a motion for sanctions must provide *adequate* notice of sanctionable conduct. Fed. R. Civ. P. 11(c)(2). The Fourth Circuit has reversed decisions where such notice was *not* adequately provided. *See e.g., Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.,* 369 F.3d 385, 399 (4th Cir. 2004) (reversing a district court's order imposing sanctions where there were errors in notice provided to plaintiff).

19

Despite this standard, the District Court ignored the strict procedural requirements of Rule 11, and in fact, ignored Defendant-Appellee's coerced demand for Plaintiff-Appellant to withdraw his three individual claims to cure the alleged sanctionable conduct. J.A.412-419. In particular, the District Court ignored that Defendant-Appellee's Rule 11 Safe Harbor letters and subsequent Rule 11 Motion for Sanctions demanded Plaintiff-Appellant wholly dismiss his three (3) individual claims in the *entirety* in addition to *any* allegations related to Plaintiff-Appellant's co-worker Solis's accident. J.A.412-419. Additionally, the District Court incorrectly held that Plaintiff-Appellant failed to perform an adequate prefiling investigation, where such allegations were still reasonably open to debate. *TMM Data, LLC*, 2016 WL 1228595, at *5.

Moreover, the District Court ignored *new* additional evidence which warranted reconsideration of its original Order granting Defendant-Appellee's Motion for Sanctions. J.A.325-330. Specifically, such new evidence from Opt-in Plaintiff-Appellant, Solis's wife, Estrella Solis, demonstrated that Plaintiff-Appellant was justified in refusing to rely exclusively on Defendant-Appellee's cherry-picked medical documents. J.A.458-482. The District Court, in addition, ignored any possibility that the Magistrate Judge's January 10, 2024 Order was manifestly unjust for failing to consider whether Plaintiff-Appellant's counsel received appropriate notice pursuant to Rule 11. J.A.325-330.

Accordingly, Plaintiff-Appellant respectfully requests this Court reverse the District Court's granting of Defendant-Appellee's Motion for Sanctions and denial of Plaintiff-Appellant's Motion for Reconsideration issued pursuant to Federal Rule of Civil Procedure 54(b).

## ARGUMENT

### I.    STANDARD OF REVIEW

### A.    Motions for Reconsideration

Motions for reconsideration must also be reviewed by the Fourth Circuit for an abuse of discretion. *Pritchard v. Wal Mart Stores, Inc.,* 3 Fed.Appx. 52, 1 (4th Cir. 2001); *United States v. Holland,* 214 F.3d 523, 527 (4th Cir. 2000); *Collison v. Int'l Chem. Workers Union,* 34 F.3d 233, 236 (4th Cir.1994); *United States ex rel. Carter v. Halliburton Co.*, 866 F.3d 199, 206 (4th Cir. 2017). A District Court abuses its discretion where it "makes an error of law." *United States v. Glover*, 9 Fed. App'x. 167, 170 (4th Cir. 2001) (citation omitted) (quoting *Koon v. United States,* 518 U.S. 81, 100 (1996)). Because "in reviewing whether the district court erred in rescinding its earlier suppression ruling, [the Fourth Circuit] must necessarily address the propriety of the original ruling." *See id*. (citing *see United States v. Herrold,* 962 F.2d 1131, 1136 (3d Cir. 1992) ("[B]ecause an appeal from a denial of a motion to reconsider necessarily raises the underlying judgment for review, the standard of review varies with the nature of the underlying judgment.")).

### B.    Motions for Sanctions

Similarly, the Fourth Circuit reviews for an abuse of discretion a district court's ruling on a motion for Rule 11 sanctions. *Blue v. U.S. Dept. of Army,* 914 F.2d 525, 539 (4th Cir. 1990); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990). Such an abuse of discretion is present where the district court's ruling was erroneous based on the law and/or the evidence. *Cooter*, 496 U.S. at 405. Thus, the District Court's factual findings must be reviewed for clear error[6] and its legal conclusions *de novo*. *Id.* at 402.

## II.    THE DISTRICT COURT ERRED IN GRANTING DEFENDANT-APPELLEE'S MOTION FOR SANCTIONS ON THE BASIS THAT PLAINTIFF'S COUNSEL FAILED TO CONDUCT THE APPROPRIATE PREFILING INVESTIGATION.

### A.    Requirements of Rule 11.

Rule 11 of the Federal Rules of Civil Procedure provides that attorneys must submit filings in good faith, and without knowledge of their falsity:

> By presenting to the court a pleading, written motion, or other paper ... an attorney ... certifies that to the best of the person's knowledge, information, and belief ... (1) it is not being presented for any improper purpose ... [and] (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery....

---

[6] *Id*. at 401.

Fed. R. Civ. P. 11(b). Where a court "determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1).

**B.    Relevant Case Law Provides that Motions for Sanctions Should Not Be Granted Where Allegations Are Reasonably Open to Debate, and May Be Proven Later Through Discovery.**

According to the Fourth Circuit, a legal position to a court is only sanctionable when, in "applying a standard of objective reasonableness, it can be said that a reasonable attorney in like circumstances could not have believed his actions to be legally justified." *Hunter v. Earthgrains Co. Bakery,* 281 F.3d 144, 153 (4th Cir. 2002) (citing *In re Sargent,* 136 F.3d 349, 352 (4th Cir.1998) (internal citations and quotations omitted)). For example, a "*legal argument must have absolutely no chance of success under the existing precedent* [. . .]" to be deemed a violation of Rule 11. *Id*. (internal quotations and citations omitted). However, a claim that cannot survive a motion to dismiss, for example, does not support that a Rule 11 sanctions motion is justified. *Id.* Rather, to be sanctionable, there must be a lack of *any* legal or factual basis. *Id.* (citing *Simpson v. Welch,* 900 F.2d 33, 36 (4th Cir.1990)). The purpose of Rule 11 is to discourage attorneys from filing frivolous lawsuits and is *not* meant to be used to require attorneys to show their claim can be proven *before* the complaint is even filed. *Id*. (citing *Cleveland Demolition Co. v. Azcon Scrap Corp.,* 827 F.2d 984, 988 (4th Cir.1987)).

Sanctions become appropriate only where a "[party] is found to have brought or continued [a] claim in bad faith." *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 422 (1978). Sanctions may be awarded only in the face of misconduct of some sort. *Fidrych v. Marriott Int'l, Inc.,* 952 F.3d 124, 146 (4th Cir. 2020) (citing *see, e.g., Goodyear Dunlop Tires Operations, S.A. v. Brown*, 137 S. Ct. 1186 (2011) ([c]ourts have inherent authority "to fashion an appropriate sanction for *conduct which abuses the judicial process*") (emphasis added; internal quotation marks omitted)).

An attorney should *not* be subject to sanctions where a position is "reasonably open to debate" at the time of filing. *See TMM Data, LLC,* 2016 WL 1228595, at *5; *see also Taggart v. Lorenzen*, 587 U.S. 554, 561 (2019) ("[W]e have said that civil contempt should not be resorted to where there is a *fair ground of doubt* as to the wrongfulness of the defendant's conduct.") (internal quotation marks and alteration omitted). In short, allegations or claims must have "*absolutely no chance of success*" to warrant sanctions. *See Lokhova v. Halper,* 30 F.4th 349, 354 (4th Cir. 2022) (citations omitted). In *Lokhova v. Halper*, for example, the Fourth Circuit reversed and remanded a lower court's granting of the appellee's motion for sanctions, where the lower court had considered *two* letters in determining whether the plaintiff's complaint was frivolous. *Id*. While the district court had held that some of the plaintiff's claims were "clearly" protected by an absolute litigation privilege, the

Fourth Circuit disagreed, finding that "[a]t bottom, it [wa]s clear that the district court could *not* have concluded, based on the record before it, that [the plaintiff's] complaint had '*no chance of success.'" Id.* at 358. As such, the Fourth Circuit found "the district court incorrectly held that the complaint was frivolous, and that Rule 11 was [. . .] violated." *Id.* at 358 (adding that the parties' litigation history additionally played a role in the court's decision to grant sanctions, finding the court's application of Rule 11 was erroneous).

Here, as explained further herein, the documents provided by Defendant-Appellee did not wholly disprove Plaintiff-Appellant's allegations relating to Solis's injuries, demonstrating that the District Court incorrectly concluded that the medical documents provided by Defendant-Appellee contradicted Plaintiff-Appellant's allegations. J.A.414 (finding "[t]he claims about the extent of Solis's injuries [we]re contradicted by his medical records"). Specifically, the District Court barred Plaintiff-Appellant from relying on the following *three* allegations:



J.A.418-419.[7] In striking such allegations, the District Court applied the incorrect standard finding that such allegations should be stricken because they were "seriously *challenged* by the medical records" *Defendant-Appellee* provided to Plaintiff-Appellant's counsel alongside its Rule 11 letters, ignoring that to be sanctionable such allegations *must have no chance of success*. J.A.414.

Furthermore, the medical records provided by Defendant-Appellee, as attached to its Safe Harbor letters (J.A.373-380; J.A.395-402), did not wholly contradict the above allegations, barred by the District Court. J.A.418-419. Rather, when comparing the medical records Defendant-Appellee provided (J.A.373-380; J.A.395-402) with the medical records Plaintiff-Appellant later obtained from Solis's wife, Estrella Solis (J.A.430-457), it is clear that Defendant-Appellee provided Plaintiff-Appellant with a mere *fraction* of Solis's medical records, yet, asked Plaintiff-Appellant to remove several allegations connected to Solis's work-accident and *three* claims in their entirety based on the same. J.A.357-380. Indeed, Defendant-Appellee represented to the District Court that allegations relating to Solis's injuries and death were "contradicted" by the medical records Defendant-Appellee sent to Plaintiff-Appellant's counsel. J.A.357-380. However, a cursory

---

[7] The District Court declined, however, to strike from Plaintiff-Appellant's First Amended Complaint the allegation indicating that Solis "suffered a life-threatening accident due to faulty machinery," finding that it was not "so devoid of evidentiary support that it violate[d] Rule 11(b)(3)." J.A.413-414.

overview of the *same* demonstrates that such allegations could be proven true and were *not* wholly contrary to medical documents provided by Defendant-Appellee, as laid out below. *Compare* J.A.27-31 *with* J.A.373-380. Moreover, as explained below, the Court's finding that Plaintiff-Appellant's factual allegations were "contradicted by [Solis's] medical records [as provided by Defendant-Appellee alongside its Rule 11 letter]," was an abuse of discretion. J.A.414-419.

      1.     <u>Medical Records Attached by Defendant-Appellee Do *Not* Contradict</u> ███████████████████████
███████████████████████

████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████

First, as mentioned above, the District Court applied the wrong standard in making this finding. J.A.414. To determine whether a party violated Rule 11, the relevant inquiry *is not* whether there is any evidence supporting that a claim or allegation has merit; rather, the inquiry is **whether there was evidence available to the party facing Rule 11 sanctions that indicated that there was no universe in which the party's claims or allegations should be proven true**. *Lokhova*, 30 F.4th at 354.

Here, the District Court, instead, looked to whether Plaintiff-Appellant's claims relating to Solis's injuries could be confirmed through Defendant-Appellee's proffered third-party's Solis's *limited* medical records, which did *not* demonstrate the entirety of Solis's recovery from his work-accident at Defendant-Appellant's premises. J.A.403-419. ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████[8]

In addition, given the reality that one doctor may overlook a diagnosis that is obvious to another or more importantly, that Plaintiff-Appellant had numerous

---

[8] *See e.g., Jie Hu, et al*., Missed rib fractures on initial chest CT in trauma patients: time patterns, clinical and forensic significance, Sept. 30, 2020, https://pubmed.ncbi.nlm.nih.gov/33000304/; *see also Amit Piple*, et al. Cervical Spine CT Can Miss Fractures in American Football Players When Protective Equipment is in Place: A Cadaver Study, Sept. 1, 2021, https://pubmed.ncbi.nlm.nih.gov/34032688/.

concerns about *Defendant-Appellant's* possession of third party Solis's medical documents, and whether such medical documentation represented a *complete* set of Solis's medical treatment in connection with his work-accident, Plaintiff-Appellant's counsel did *not* feel comfortable removing this allegation from Plaintiff-Appellant's FAC, and given Plaintiff-Appellant's understanding of what happened which contradicted Defendant-Appellee's representations. J.A.136-138. In fact, Defendant-Appellee attached only a *single* day's medical records to its letter, from Solis's trip to the emergency room immediately after his accident at Defendant-Appellee's premises. J.A.373-380. As such, because the medical documents provided by Defendant-Appellee did *not* preclude Plaintiff-Appellant's understanding and allegations relating to Solis, Rule 11 sanctions were *not* warranted based on this allegation. *Lokhova,* 30 F.4th at 354.

2. Medical Records Attached by Defendant-Appellee Do Not Contradict █████████████████████████

Similarly, relating to the allegation that Solis spent several months in critical condition from the accident, the District Court held that "claims about the care Solis received" were "*called into question by the medical records.*" J.A.415. ████████

████████████████████████████████████████████████

███████████████████████████████ and therefore, Solis could not have spent several months in critical care from the accident. J.A.415.

Further, the District Court took issue with the fact that Plaintiff-Appellant's counsel did not include "an affidavit, declaration, or other supporting evidence from Canales to verify what exactly he saw or was told or when he [was] [sic] conveyed the information." J.A.415.

However, once again, the District Court applied the incorrect standard, placing the burden on Plaintiff-Appellant's counsel to produce *additional* evidence supporting that the allegations in the FAC were true when rather, the appropriate inquiry should've been whether the evidence provided to Plaintiff-Appellant's counsel prior to filing the FAC made it impossible for the allegations to be true. J.A.412-419; *Lokhova,* 30 F.4th at 354. Indeed, because Defendant-Appellee only provided Plaintiff-Appellant's counsel with a *single day* of Solis's medical records, namely, from the day of the accident, the only indication that the allegation that Solis spent several months in critical care from the accident came from Defendant-Appellee's counsel themselves. J.A.373-380. The only evidence that could have demonstrated the allegation relating to Solis's condition after the accident would be medical records or evidence from months after the accident. J.A.59. However, such records were *not* provided to Plaintiff-Appellant prior to filing his FAC. J.A.373-380, and Plaintiff-Appellant would never have had access to *any* medical documents belonging to Solis. As such, because Defendant-Appellee's proffered medical records for Solis did *not* contradict this allegation, and because the District Court

30

was instead looking for evidence to support Plaintiff-Appellant's claims, the District

Court's finding striking this allegation was an abuse of discretion. J.A.415-419.

> 3. <u>Medical Records Attached by Defendant-Appellee Do Not</u>
> <u>Contradict ███████████████████████</u>

Regarding the allegation that the accident Solis faced with Defendant-

Appellant led to his death, the District Court indicated that "*given the relatively*

*minor injuries Solis suffered from the fall [at OPW]*" the accident could *not* have led

to his death. J.A.415. However, again, the *single* day emergency room medical

records after Solis's work-related accident in October 2021, do *not* preclude a

finding that the same accident later led to, *or played a role*, in his ultimate death in

May 2022. J.A.373-380; J.A.395-402.

> **C.    Because the Medical Records Provided by Defendant-
> Appellee's Counsel Did Not Contradict Plaintiff-Appellant's
> Claims, Plaintiff-Appellant's Counsel Performed An
> Appropriate Investigation In Light of the Circumstances,
> And Rule 11 Sanctions Were Not Warranted.**

To determine whether a party performed a reasonable investigation pursuant

to Rule 11, the Fourth Circuit looks to whether an attorney or individual in the

party's shoes would have acted the same, or differently. *Brubaker v. City of*

*Richmond,* 943 F.2d 1363, 1373 (4th Cir. 1991) ("The prefiling investigation must

be objectively reasonable") (citations omitted). However, importantly, the Fourth

Circuit has noted that the purpose of Rule 11 is not to "require that a complaint be

proven *before* a complaint can be filed." *Id.* (citations omitted). Furthermore, the

Fourth Circuit has noted:

> To be reasonable, the prefiling factual investigation must uncover some information to support the allegations in the complaint. A complaint containing allegations unsupported by *any* information obtained prior to filing violates the required prefiling factual investigation. *In re Kunstler,* [914 F.2d 505, 516 (4th Cir. 1990)]. That is, where there is *no* factual basis for a plaintiff's allegations, the complaint violates Rule 11's factual inquiry requirement.

*Id.*

Here, the District Court provided that Plaintiff-Appellant's Counsel's alleged

failure to investigate these allegations warranted Rule 11 sanctions. J.A.416-417.

However, such finding ignores the substance of Defendant-Appellee's letter, and the

objective standard used to determine if Rule 11 has been violated. *Compare* J.A.416

*with* J.A.346-402; *Brubaker,* 943 F.2d at 1373.

As explained further herein, because the medical records did not

unequivocally contradict Plaintiff-Appellant's understanding of Solis's injuries, and

because Defendant-Appellee made it clear that the only way to avoid a Rule 11

sanctions motion would be to *withdraw* Plaintiff-Appellant's *individual* claims,

Plaintiff-Appellant's counsel performed a reasonable investigation into the

circumstances based on *Plaintiff-Appellant's* personal knowledge and

understanding. J.A.346-402. Indeed, outside of relying on Plaintiff-Appellant's

version of events, there was nothing more Plaintiff-Appellant's counsel could have

done to investigate the injuries and extent of the same regarding Solis. *In re Kunstler*, 914 F.2d at 514 ("For the purposes of Rule 11, the factual inquiry necessary to file a complaint is generally satisfied if all of the information which can be obtained prior to suit supports the allegations made, even though *further* facts must be obtained through discovery to finally prove the claim.").

Given the separate workers' compensation action brought on behalf of Narciso Solis against Defendant-Appellee OPW, it is clear Defendant-Appellee was in a better position to fully understand the extent of the medical diagnoses of Solis; however, neither Plaintiff-Appellant nor his counsel would have had the same level of understanding as Defendant-Appellee. J.A.346-402; J.A.257-260. Furthermore, the Court's presumption that Plaintiff-Appellant's counsel could have asked Estrella Solis about her husband's diagnosis (J.A.417-418) ignores *one* largely important detail: Estrella Solis was represented by counsel for her husband's worker's compensation claim; therefore, Plaintiff-Appellant's counsel would not be able to discuss this subject matter with Estrella Solis.[9] As such, because it was clear the medical records cited by Defendant-Appellee did *not* represent the entirety of Solis's medical history, Plaintiff-Appellant's counsel relied on Plaintiff-Appellant's

---

[9] N.C Rule Prof. Cond. 4.2 ("In representing a client, a lawyer shall *not* communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.").

understanding of events *after* Solis's accident, (as was communicated to him by

Estrella Solis), and as he recalled, given his personal experience and friendship with

Solis. J.A.133-134; J.A.138-139.

 In light of these circumstances, Plaintiff-Appellant's counsel performed a

reasonable investigation into the factual basis of these allegations, to the best of

Plaintiff-Appellant's counsel's ability. *In re Kunstler*, 914 F.2d at 514.

### III. THE DISTRICT COURT ERRED IN FINDING PLAINTIFF-APPELLANT'S COUNSEL RECEIVED PROPER NOTICE PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE DESPITE NOT GRANTING DEFENDANT-APPELLEE'S MOTION TO DISMISS THE ENTIRETY OF PLAINTIFF-APPELLANT'S INDIVIDUAL CLAIMS.

### A. Federal Rule of Civil Procedure 11 Specifies that Strict Notice Requirements Must Be Met Before Sanctions Can Be Issued.

Only after 21 days, commonly referred to as the "Safe Harbor" period, and

after the opposing party's refusal to withdraw such position, may a party file a

motion for sanctions under Rule 11. *Rector v. Approved Federal Sav. Bank*, 265 F.3d

248, 251 (4th Cir. 2001) (citing Fed. R. Civ. P. 11 Advisory Committee Notes (1993

Amendments). "The procedural protections afforded by due process ensure the

sanctioned party had an adequate and meaningful opportunity to prepare and provide

the court with an explanation of [their] conduct." *In re Glasco*, 321 B.R. 695, 699

(W.D.N.C. 2005) (citing *Simmerman v. Corino*, 27 F.3d 58, 64 (3d Cir.1994); *see*

*also, Steele v. Richland County Dep't of Social Servs.,* 25 F.3d 1041, 1994 WL 200807, *2 (4th Cir.1994) (requiring notice of specific Rule 11 concerns before the imposition of sanctions so that the party subject to the sanctions may be able to submit or proffer clarifying affidavits or testimony)).

### B.   Defendant-Appellee Made Clear That Plaintiff-Appellant's Individual Claims Needed to Be Withdrawn to Avoid Rule 11 Sanctions.

In both Defendant-Appellee's Safe Harbor Letters *and* subsequent Motion for Rule 11 sanctions, Defendant-Appellee made it explicitly clear that Plaintiff-Appellant needed to *withdraw* his individual claims, because such individual claims were allegedly premised on allegations that violated Rule 11, to avoid a motion for sanctions. J.A.346-380. In fact, Defendant-Appellee stated in both its draft motion for sanctions which was sent to Plaintiff-Appellant alongside its Rule 11 letter, *and* subsequently filed Motion for Sanctions, that it was not "seek[ing] only to have the sanctionable allegations stricken from the Complaint" and instead, that Plaintiff-Appellant needed to withdraw his individual claims in order to cure the alleged deficiencies raised by Defendant-Appellee. J.A.352-353; J.A.368-369; J.A.391.

Moreover, Defendant-Appellee based its position on its claim that "[Plaintiff-Appellant's] salacious allegations related to Solis's accident and death [we]re not passing claims that ha[d] little relevance to [Plaintiff-Appellant's] causes of action

[. . .]", and that if that were the case, Defendant-Appellee would only ask that such allegations be stricken from the FAC solely. J.A.352-353; J.A.368-369; J.A.391.

> 1.    The District Court Ignored that Defendant-Appellee's Demands Were For Plaintiff-Appellant to *Withdraw* Counts III through IV to Cure Deficiencies Raised by Defendant-Appellee.

To receive proper notice pursuant to Rule 11, a party must provide notice of a motion for Rule 11 sanctions, and such notice "**must describe the specific conduct that allegedly violates Rule 11(b).**" Fed. R. Civ. P. 11(c)(2). "Due process requires that the attorney (or party where applicable) has fair notice of the possible imposition of Rule 11 sanctions and of the reasons for their imposition." *Donaldson v. Clark*, 819 F.2d 1551, 1559 (11th Cir. 1987).

As explained above and herein, the District Court completely ignored that Defendant-Appellee made it clear to Plaintiff-Appellant that the only way to avoid Rule 11 sanctions was to *withdraw* his individual claims. J.A.358-359; J.A.382-383; J.A.368-369; J.A.391. Specifically, the Court's Order "grant[ed] OPW's [M]otion, but, given the circumstances [. . .] decline[d] to dismiss any of Canales's claims." J.A.403. The Court recognized that "OPW ask[ed] the Court to strike the false allegations and dismiss two of [Plaintiff-Appellant's] remaining claims that rely on those allegations," adding that "OPW's [M]otion, as filed, ask[ed] the Court to dismiss Counts Three, Four, and Five. D.E. 30. But [that] since the [M]otion's filing, the Court dismissed Count Four. Sept. 27, 2023 Order, D.E. 58." J.A.412, fn. 6. The

36

District Court indicated that "given the nature of the violation, the court decline[d] to impose all of the sanctions OPW s[ought]." J.A.412.

Rather, the District Court continued its analysis into the challenged allegations of Plaintiff-Appellant's First Amended Complaint. J.A.412-419. Even more disconcerting, the District Court completely misconstrued Defendant-Appellee's position, stating that "OPW requested that as a sanction the court dismiss two of Solis's remaining claims." J.A.418. However, this was *not* Defendant-Appellee's position, as Defendant-Appellee made clear consistently in its Safe Harbor letters and subsequent Motion for Sanctions that Plaintiff-Appellant would need to "withdraw" his individual claims, in addition to any allegations relating to Solis to successfully avoid a Rule 11 sanctions motion. J.A.352-353; J.A.368-369; J.A.391.

> 2.  <u>Due Process Was Not Afforded as Plaintiff-Appellant's Counsel Would Have Responded Differently Had Defendant-Appellee Requested Plaintiff-Appellant Remove Three Allegations, Rather than Claims.</u>

In *In re Glasco*, the Middle District of North Carolina reviewed a bankruptcy court's Rule 11 sanctions order for an abuse of discretion. 321 B.R. 695, 699 (W.D.N.C. 2005).[10] In doing so, the *Glasco* court recognized that the purpose of notice requirements of Rule 11 are to "ensure the sanctioned party [is given] an

---

[10] Although *In re Glasco* is not a Fourth Circuit opinion, given it's review of a Rule 11 sanctions Order for an abuse of discretion, and should be used persuasively. 321 B.R. at 699.

adequate and meaningful opportunity to *prepare and provide the Court with an explanation of [their] conduct.*" *Id.* The issue before the *Glasco* court was whether the appellant was afforded sufficient notice prior to the imposition of sanctions, sufficient to satisfy due process requirements. *Id*. at 700. Specifically, the appellant was provided notice which indicated that the attorneys' actions in filing a motion for reconsideration and requesting sanctions warranted sanctions. *Id*. The lower court granted the appellee's motion for sanctions, based in part on the filing of the motion for reconsideration and request for attorneys' fees, but *additionally* due to the delay in the resolution of the case due to the appellant's conduct. *Id*.

The Middle District of North Carolina reversed the lower court's decision, finding the appellant did not receive sufficient notice pursuant to Rule 11. *Id*. Important to the court's decision was due to "the failure to give notice of the specific authority under which sanctions are sought prevents a party from knowing the standard by which [t]he[y] must defend [thei]r conduct." *Id.* ("The [a]ppellee's request for sanctions fails to identify the chief specific conduct for which the [a]ppellant was ultimately sanctioned."). The Court further noted that the appellant only had notice that she would have to defend her specific conduct, as mentioned in the appellee's request for sanctions, and did not have notice that she would have to defend her conduct outside of this request. *Id*. at 701. Moreover, the court found that "[h]ad the [a]ppellant been given notice that sanctions would be imposed primarily

38

on the delay in resolving the case attributable to her conduct, she likely would have used her appearance before the [c]ourt to defend herself more fully on those grounds instead." *Id*. Ultimately, the *Glasco* court remanded the case to the lower court for further proceedings, finding that "[w]ithout proper notice of the [c]ourt's authority to impose sanctions or of the specific conduct warranting sanctions, due process concerns prohibit the imposition of sanctions against the [a]ppellant at this time." *Id*. at 702.

Much like the attorney in *In re Glasco*, Plaintiff-Appellant's counsel, here, did *not* receive proper notice of the conduct for which they were ultimately sanctioned. *Compare* J.A.352-353; J.A.368-369; J.A.391 *with* J.A403-419. Rather, Plaintiff-Appellant's counsel was *not* placed on notice that merely removing *solely* three allegations, which were irrelevant to Plaintiff-Appellant's individual claims, would cure the alleged deficiencies raised by Defendant-Appellee. *Compare* J.A.352-353; J.A.368-369; J.A.391 *with* J.A403-419. Had Plaintiff-Appellant's counsel known this, Plaintiff-Appellant's counsel may have responded differently and decided to remove such allegations altogether to avoid sanctions. *In re Glasco*, 321 B.R. at 699. Rather, Plaintiff-Appellant's counsel was acting under Defendant-Appellant's explicit demand that Plaintiff-Appellant would have to *remove* Plaintiff-Appellant's three individual claims in their entirety to cure the deficiencies raised by Defendant-Appellee, as was made unequivocally clear in Defendant-Appellee's

39

safe harbor letters, and that such would constitute misconduct, based on Plaintiff-Appellant's counsel's responsibility to provide competent representation. N.C. Rules of Prof. Conduct R. 8.4; N.C. Rules of Prof. Conduct R. 1.1;  J.A.352-353; J.A.368-369; J.A.391. Since Plaintiff-Appellant's counsel was not given adequate notice and were not able to defend themselves sufficiently, given their understanding that the sanctions Motion demanded removing *both* three individual claims, in addition to, factual allegations regarding Solis's work accident, due process concerns "prohibit the imposition of sanctions against the [Plaintiff-Appellant's counsel] at this time." *In re Glasco*, 321 B.R. at 702.

**IV.  THE DISTRICT COURT ERRED IN DENYING PLAINTIFF-APPELLANT'S RULE 54 MOTION FOR RECONSIDERATION ON THE BASIS OF PLAIN ERROR OR MANIFEST INJUSTICE WHERE PLAINTIFF-APPELLANT'S COUNSEL WAS NOT AFFORDED PROPER NOTICE PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE.**

**A.  Relevant Case Law Provides that Rule 11 Sanctions Orders Should Be Reversed Where Strict Procedural Requirements Were Not Followed.**

The Fourth Circuit has made clear that where strict procedural requirements of Rule 11 have *not* been followed, that an order granting a motion for Rule 11 sanctions must be reversed and remanded. *Howell v. Nesbit*, 149 F.3d 1168 (4th Cir. 1998). Specifically, in *Howell*, the Fourth Circuit reviewed a party's motion for reconsideration of a district court's order granting a defendant-appellee's motion for

sanctions. *See id*. At issue in *Howell* was whether the appellant was provided with sufficient notice of Rule 11 sanctions, and whether the party's subsequent motion for reconsideration on the basis that they were not provided with sufficient notice was appropriately denied. *See id*. at *3. The Fourth Circuit reasoned that because the appellant was not afforded the entire 21-day safe harbor period, and rather, was provided with a draft motion for sanctions the day before the appellee filed the same, the appellant was not afforded appropriate notice. *Id.*

Following such reasoning, the Fourth Circuit held that the lower court abused its discretion by awarding sanctions without following the strict procedural requirements of Rule 11. *Id*. (citing *see Johnson v. Waddell & Reed, Inc*., 74 F.3d 147, 151-152 (7th Cir. 1996) (finding a court abuses its discretion when it does not follow the procedures of Rule 11)). As such, the Fourth Circuit vacated both the district court's order granting the appellee's motion for sanctions and the order denying the appellant's motion for reconsideration. *Id.*

In the instant case, as explained previously, Plaintiff-Appellant's counsel was ***not*** afforded appropriate notice that merely removing three allegations would be sufficient to deter Defendant-Appellee's Motion for Sanctions. *Compare* J.A.352-353; J.A.368-369; J.A.391 *with* J.A.403-449. Furthermore, Plaintiff-Appellant's counsel filed a motion for reconsideration on a such basis, similar to the appellant in *Howell*. J.A.458-482. Here, the District Court abused its discretion in denying

41

Plaintiff-Appellant's counsel's Motion for Reconsideration on this basis given

Fourth Circuit authority provides that motion for sanctions orders should not stand

where the strict requirements of Rule 11 were not followed. *In re Glasco*, 321 B.R.

at 702; *see also Howell*, 149 F.2d at 1168.

**V.    THE DISTRICT COURT ERRED IN DENYING PLAINTIFF-APPELLANT'S RULE 54 MOTION FOR RECONSIDERATION DESPITE PLAINTIFF-APPELLANT'S NEWLY DISCOVERED EVIDENCE (FULL ACCESS TO OPT-IN PLAINTIFF, (FORMERLY THIRD PARTY/PUTATIVE PLAINTIFF) NARCISO SOLIS'S MEDICAL DOCUMENTS).**

**A.    New Evidence Warrants Reconsideration of Orders In the Fourth Circuit.**

In the Fourth Circuit, to prevail on a motion for reconsideration based on newly

discovered evidence the movant must demonstrate:

> (1) the evidence is newly discovered since the judgment was entered;
> (2) due diligence on the part of the movant to discover the new evidence
> has been exercised; (3) the evidence is not merely cumulative or
> impeaching; (4) the evidence is material; and (5) the evidence is such
> that is likely to produce a new outcome if the case were retried, or is
> such that would require the judgment to be amended.

*See France v. Zapata Haynie Corp.*, 946 F.2d 885, at *4 (4th Cir. 1991); *see also*

*Boryan v. United States*, 884 F.2d 767, 771 (4th Cir. 1989) (providing the same)

(citations omitted).

**B.    The District Court Abused its Discretion in *Denying* Plaintiff-Appellant's Motion for  Reconsideration Based on Newly Available Evidence.**

In the District Court's order denying Plaintiff-Appellant's Motion for reconsideration, the District Court held that "*[t]he new medical records, d[id] not, however, undermine Magistrate Judge Numbers' decision to prohibit [P]laintiff[-Appellant] from relying on certain allegations*." J.A.328. Part of its reasoning was that "███████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████" J.A.328.

The District Court, however, did not perform the appropriate analysis, because, based on the District Court's previous order granting Defendant-Appellee's Motion for Sanctions, the appropriate inquiry was not whether such new medical records demonstrated that the allegations relating to Solis's workplace injury were correct, but whether such new medical records demonstrated that Plaintiff-Appellant's counsel performed an appropriate inquiry into whether the medical records provided by Defendant-Appellee contradicted the allegations relating to Solis's injuries. J.A.418-419. Such is the case given the District Court previously made it unequivocally clear that the basis for the Court's granting of Rule 11 sanctions was "*not that [Plaintiff-Appellant's] factual allegations d[id] not match*

43

*up to OPW's version of the facts that violate[d] Rule 11, [rather] it [wa]s [Plaintiff-Appellant's counsel's alleged] failure to investigate the evidentiary basis for the allegations that d[id]*." J.A.417.

1. <u>New Evidence, Namely the Additional Medical Documents from New Opt-in Plaintiff Estrella Solis, Demonstrated that the Medical Records Previously Provided by Defendant-Appellee Did Not Showcase the Extent of the Injuries and Impact Solis Suffered from His Accident At OPW.</u>

Plaintiff-Appellant's Motion for Reconsideration should have been granted given that the newly discovered medical records from Estrella Solis demonstrated new facts relating to Solis's injuries, showcasing that the District Court could *not* have concluded earlier that Plaintiff-Appellant's barred allegations had ***no*** chance of being proven true. J.A.458-482. Such evidence was material as Rule 11 requires that there be *no chance of success* for an allegation or claim to be proven true, for Rule 11 sanctions to be warranted. *Hunter,* 281 F.3d at 153. Instead, the District Court erroneously ignored that the new medical documents from Estrella Solis demonstrated, at bottom, that there was a chance of success for Plaintiff-Appellant's allegations to be proven true at the time the FAC was filed because there were many more medical records relating to Solis's injuries from his time at OPW than Defendant-Appellee provided, which were relevant to Plaintiff-Appellant's allegations. J.A.420-457.

Moreover, the District Court ignored that such evidence was not available previously given Estrella Solis was represented by counsel based on her husband's worker's compensation claim, and that Plaintiff-Appellant's counsel was prohibited from speaking with Estrella Solis regarding such subject matter for this reason. J.A.257-260; N.C Rule Prof. Cond. 4.2. Indeed, it was only because Estrella Solis had opted into the action on behalf of her deceased husband (Solis), that Plaintiff-Appellant's counsel now represented Estrella Solis and was able to speak with her regarding her husband's injuries from OPW and the ultimate cause of his death. J.A.420-457. In fact, Opt-in Plaintiff Estrella Solis expressed that it was her belief, (based on her observance of her husband's condition), that the accident at OPW led to the rapid decline of Solis's health, and within six months he had passed away. J.A.428-429.

Indeed, the District Court *wholly* ignored that such evidence met all the requirements warranting reconsideration of its previous order granting Defendant-Appellee's Motion for Sanctions. J.A.325-330. Perhaps most importantly, the District Court failed to acknowledge that such evidence was material since it showcased that Plaintiff-Appellant's allegations had a chance of success prior to the Court's Order imposing sanctions, showcasing that such Order was an abuse of discretion. J.A.325-330.

45

2.   The District Court's Finding That One Day Was Not Sufficient to Conduct A Reasonable Inquiry Was an Abuse of Discretion.

The District Court went on to conclude that the new medical records did not demonstrate that Magistrate Judge Number's opinion indicating that "a period of one day would not have provided [Plaintiff-Appellant's] counsel with time to conduct a reasonable inquiry into the basis for [Plaintiff-Appellant's] allegations" was unjust. J.A.329. However, the Fourth Circuit has rejected the approach that the "number of hours allegedly spen[t] by counsel in prefiling investigation[s]" could affect whether a Rule 11 sanctions order should be affirmed. *In re Kunstler,* 914 F.2d 505, 516 (4th Cir. 1990) (affirming a lower court's sanction order because evidence provided that the allegations included by the plaintiff's attorney could never be accurate). As such, the District Court's finding that one day was not sufficient to conduct a reasonable inquiry was an abuse of discretion. J.A.329.

## CONCLUSION

Overwhelmingly, based on the record and the argument presented herein, this Court should hold and reverse and remand as follows:

(1)   The District Court erred in granting Defendant-Appellee's Motion for Sanctions, and finding that Plaintiff-Appellant's counsel violated Federal Rule of Civil Procedure 11 where Plaintiff-Appellant's allegations had a chance of success when reviewed alongside medical documents provided by Defendant-Appellee;

(2)     The District Court erred in granting Defendant-Appellee's Motion for Sanctions and finding that Plaintiff-Appellant's counsel received proper notice of such sanctions, where the District Court departed from Defendant-Appellee's requests to strike Plaintiff-Appellant's individuals claims;

(3)     The District Court erred in denying Plaintiff-Appellant's Motion for Reconsideration where Plaintiff-Appellant demonstrated that Defendant-Appellee failed to provide Plaintiff-Appellant with proper notice pursuant to Rule 11 before departing from Defendant-Appellee's request to dismiss Plaintiff-Appellant's individual claims; and

(4)     The District Court erred in denying Plaintiff-Appellant's Motion for Reconsideration where new evidence demonstrated that Plaintiff-Appellant was justified in not relying on Defendant-Appellee's cherry-picked medical documents of a third party.

Accordingly, Plaintiff-Appellant respectfully requests this Court reverse the District Court's order granting Defendant-Appellee's Motion for Sanctions and order denying Plaintiff-Appellant's Motion for Reconsideration and remand for further proceedings.

## **REQUEST FOR ORAL ARGUMENT**

To help establish and clarify the rule of law, Counsel for Plaintiff-Appellant respectfully requests oral argument on this matter.

47

Respectfully submitted,

/s/ *Gilda A. Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
Hannah B. Simmons (NCSB No. 59579)
Matthew Marlowe (NCSB No. 60035)
**THE LAW OFFICES OF GILDA A.
HERNANDEZ, PLLC**
1020 Southhill Drive, Suite 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
hsimmons@gildahernandezlaw.com
mmarlowe@gildahernandezlaw.com

*Attorneys for Plaintiff-Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

(1) This brief has been prepared in a proportionally spaced typeface using Microsoft Word, Times New Roman, 14 point.

(2) Exclusive of the table of contents; table of citations; certificate of compliance and the certificate of service, this Opening Brief of Plaintiff-Appellant contains <u>10,010 words.</u>

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions. If the Court so directs, I will provide an electronic version of the brief and a copy of the word or line printout.

August 19, 2024

/s/ *Gilda A. Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
Hannah B. Simmons (NCSB No. 59579)
Matthew Marlowe (NCSB No. 60035)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
1020 Southhill Drive, Suite 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
hsimmons@gildahernandezlaw.com
mmarlowe@gildahernandezlaw.com

*Attorneys for Plaintiff-Appellant*
